IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br> *ex. rel.* Pamela Lynn Scalamogna, <br><br> Plaintiff, <br><br> v. <br><br> STEEL VALLEY AMBULENCE., *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 14-524 <br><br><br> Judge Cathy Bissoon |

## **MEMORANDUM AND ORDER**

### I. MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendants Steel Valley Ambulance, John T. Jumba, Sr., Patricia Jumba, John J. Jumba, and Lori Jumba (collectively, the "Defendants") (**Doc. 33**), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' Motion to Dismiss (**Doc. 33**) will be GRANTED, and Plaintiff's First Amended Complaint will be DISMISSED without prejudice.

### A. Background

Defendant Steel Valley Ambulance, Inc. ("Steel Valley") is an ambulance service based in Homestead, Pennsylvania that provides services for patients who are insured by Medicare and Medicaid. Am. Compl. (Doc. 17) ¶¶ 6-7, 10. Its former emergency medical technician ("EMT"), Pamela Scalamogna ("Plaintiff"), filed claims against Steel Valley and four individuals, John T. Jumba, Sr., Patricia Jumba, John J. Jumba, and Lori Jumba, under the False Claims Act ("FCA") (Counts 1-7). See generally Doc. 17. Plaintiff also filed common law claims alleging payment under mistake of fact (Count 8) and unjust enrichment (Count 9). Id.

Since the United States declined to intervene in this action (see Doc. 13), Plaintiff is pursuing these claims individually.

According to the Amended Complaint, Plaintiff began working for Steel Valley in September 2010. Doc. 17 at ¶¶ 16-17. Plaintiff alleges that, during her employment with Steel Valley, she observed Defendants violate the FCA by deviating from five Medicare and Medicaid standards. Id. at ¶¶ 24-113. First, Plaintiff claims that Defendants deviated from vehicle and staff requirements. Id. at ¶¶ 25-39. She alleges that ambulance service providers are required to meet state motor vehicle standards, as well as "Star of Life" standards. Id. at ¶¶ 25, 26, 30. She contends that Steel Valley's ambulances did not meet these standards as they had the following defects: broken heaters and air conditioners; missing and inadequate oxygen supplies; a broken window defroster; defective dashboard wiring; a broken fan belt; an engine failure; bald tires; and a back door that was insecure. Id. at ¶¶ 29, 32, 34. Plaintiff also claims that one ambulance was unavailable for inspection, and another had an expired registration. Id. at ¶¶ 29, 31. Furthermore, Plaintiff alleges that crews that were dispatched to Advanced Life Support calls were trained only to provide Basic Life Support services. Id. at ¶ 37.

Second, Plaintiff claims that Defendants billed for services that were medically unnecessary. Id. at ¶¶ 40-66. She asserts that Steel Valley transported patients by ambulance when it could have used a wheelchair van. Id. at ¶¶ 46-48. Plaintiff specifically alleges that Defendant John J. Jumba and Jackie Riga "reviewed documents prepared by [Plaintiff] and required changes to the documents that did not reflect patient care or treatment of patient that was performed on the date of transport." Id. at ¶ 50. She also claims that Steel Valley did not maintain certificates of medical necessity. Id. at ¶¶ 51-55. She further alleges that Steel Valley billed for emergency service when a standard level of service would have been sufficient, and

billed for Advanced Life Support service when Basic Life Support service would have been sufficient. Id. at ¶¶ 56-66. Plaintiff suggests that Steel Valley maintains "trip sheets" of each transport and that the company "bills for levels of service that cannot be justified by its trip sheets." Id. at ¶¶ 63-65.

Third, Plaintiff claims that Defendants deviated from "origin and destination requirements" by transporting patients farther than the nearest facility. Id. at ¶¶ 67-72. Again, she alleges Steel Valley has trip sheets that contradict its submissions to Medicare. Id. at ¶¶ 69-72.

Fourth, Plaintiff claims that Defendants violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b). Id. at ¶¶ 73-88. She alleges that Steel Valley has "illegal provider agreements with several providers . . . ." Id. at ¶ 78. According to the amended complaint, these agreements violate the Anti-Kickback Statute because: they identify Steel Valley as a preferred provider; they do not "disclose the provision of storage of supplies"; and Steel Valley "deviates from the agreement[s] in a commercially unreasonable manner." Id. at ¶¶ 79-88.

Fifth, Plaintiff claims that Defendants deviated from interim billing certification and reporting requirements. Id. at ¶¶ 89-99. In support of this theory, she repeats her allegation that Steel Valley did not maintain the required records, including certificates of medical necessity. Id. at ¶¶ 94-97. She also alleges that Steel Valley completed paperwork incorrectly, to indicate that it performed a "two-man-sheet-lift" and provided ambulance transportation when it did not. Id. at ¶ 98. Finally, as part of her fifth theory of liability, Plaintiff claims Defendants deviated from annual certification and reporting requirements. Id. at ¶¶ 100-113. She alleges that in general, service providers submit annual cost reports. Id. at ¶¶ 100-102. She claims these reports contain a certification that they are "true, correct and complete," and that these services

3

were provided in compliance "with the laws and regulations regarding the provision of health care services . . . ." Id. at ¶ 103. Plaintiff contends that, since 2010, Steel Valley has submitted false annual cost reports to Medicare. Id. at ¶¶ 109-112.

Plaintiff also raises several common law claims, alleging that Steel Valley misrepresented the condition of its patients, "as well as other facts necessary to establish entitlement to reimbursement under the Medicare programs." Id. at ¶ 163. She seeks to recover money which, she claims, the government mistakenly paid to Defendants based on these representations. Id. at ¶ 164. She also claims Defendants were unjustly enriched at the government's expense, because they should not be permitted to keep payments they received "for rendering fraudulent services to certain Medicare beneficiaries . . . ." Id. at ¶ 167.

B. Analysis

1. Plaintiff's False Claims Act Claims (Counts 1-7)

"[T]he FCA makes it unlawful to knowingly submit a fraudulent claim to the government." U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 840 (3d Cir. 2014). As Defendants argue, "plaintiffs must plead [FCA] claims with particularity in accordance with Rule 9(b)." U.S. ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 301 n.9 (3d Cir. 2011) (citing U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., 149 F.3d 227, 234 (3d Cir. 1998)). In order for Plaintiff to satisfy Rule 9(b)'s heightened pleading standard, she must provide "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 157-58 (3d Cir. 2014) (citations omitted). "Describing a mere opportunity for fraud will not suffice." Id. at 158.

Defendants argue that Plaintiff has failed to comply with Rule 9(b)'s heightened pleading requirements. Specifically, Defendants claim that the Amended Complaint should be dismissed because it "fails to identify a single false claim that the defendants actually submitted to the government—not one." Doc. 34 at 11-12. However, as noted, to satisfy Rule 9(b) for purposes of a FCA claim, a plaintiff must merely allege "particular details of a scheme to submit false claims paired with *reliable indicia that lead to a strong inference that claims were actually submitted*." Foglia, 754 F.3d at 156 (emphasis added) (adopting the pleading requirements set forth by the First, Fifth, and Ninth Circuits). Under this standard, a plaintiff <u>need</u> <u>not</u> identify a specific claim for payment to survive a motion to dismiss. Id. (citing Wilkins, 659 F.3d at 308); see also United States ex rel. Brown v. Pfizer, Inc., No. 05-6795, 2016 WL 807363, at *11 (E.D. Pa. Mar. 1, 2016) ("The fact that Relators did not identify a single reimbursement is not fatal to their claims at this stage of the proceedings."); United States v. Medco Health Sys., Inc., No. 12-522, 2014 WL 4798637, at *11 (D.N.J. Sept. 26, 2014) (stating that a plaintiff need not identify specific claims submitted for reimbursement because "such specific proofs are usually inaccessible to a qui tarn plaintiff").

Nonetheless, although Defendants are mistaken that Plaintiff must identify *specific claims* submitted to the government to survive a motion to dismiss, the Court ultimately agrees with Defendants that, as currently pled, Plaintiff has not alleged sufficient facts to meet with requirements of Rule 9(b). As discussed above, Plaintiff alleges that Steel Valley violated the FCA, by, among other things, using ambulances that did not meet the Medicare regulations, transporting patients in ambulances when doing so was not medically necessary, failing to transport patients to the closest medical facilities, engaging in kickbacks with other health care providers, and failing to keep adequate records to support billing practices. Even assuming that

these allegations constitute "a scheme to submit false claims," the Court finds that Plaintiff does not allege sufficient facts giving rise to a "reliable indicia that lead to a strong inference that claims *were actually submitted*." Foglia, 754 F.3d at 156 (emphasis added). For instance, although Plaintiff alleges that she was instructed by management for Defendants to change "documents" so that they "did not reflect patient care or treatment of patient that was performed on the date of transport," she does not specifically allege that Defendants gave this instruction in order to defraud Medicare. Doc. 17 at ¶ 50.

The Court, however, will grant Plaintiff leave to file a Second Amended Complaint in order to reassert her FCA claims. The Court notes that the facts of this case are very similar to those alleged in a case recently decided by the Court of Appeals for the Second Circuit, United States ex rel. Chorches for Bankruptcy Estate of Fabula v. American Medical Response, Inc., 865 F.3d 71 (2d Cir. 2017) ("Chorches"). There, as here, the plaintiff was an EMT for an ambulance company who alleged that the defendant falsely certified ambulance transports as being medically necessary and submitted claims it knew were not medically reimbursable under Medicare. Id. at 75-77. The Second Circuit recognized that the plaintiff did not have personal knowledge of exact billing numbers, dates or amounts for claims submitted to the government. Id. at 81. Nonetheless, the Court found that the plaintiff had adequately stated a claim under the FCA, finding that a relator does not have to plead details of specific alleged false billings or invoices, as long as he or she can allege facts leading to a strong inference that claims were submitted and that information about such claims was solely within the defendant's control. Id. at 81-86. In that case, the plaintiff had alleged that the ambulance company routinely made EMTs and paramedics revise or re-create reports to include false statements demonstrating medical necessity in order to qualify for Medicare reimbursement. Id. at 84-85. The court found

that "in alleging that supervisors specifically referenced Medicare as the provider to whose requirements the allegedly falsified revisions were intended to conform, the [complaint] supports a strong inference that false claims were submitted *to the government*." Id. at 85 (emphasis in original).

The Court notes that, at first glance, the Second Amended Complaint filed on March 31, 2017 (which the Court struck as being filed without prior leave of Court) appears to allege similar facts to those alleged in Chorches. Specifically, the stricken Second Amended Complaint alleges that Defendant John Jumba Jr. "repeatedly instructed Plaintiff-Relator to remove statements about a patient's ability to walk or ride in a wheel chair from trip documentation," explaining that "Medicare would not reimburse for ambulance transport that could have been performed in a wheelchair van." Doc. 39 at ¶¶ 62-63. As the Court found in Chorches, these allegations would establish a strong inference that claims for ambulance services were in fact submitted to the government. Accordingly, the Court will dismiss Plaintiff's First Amended Complaint without prejudice to her filing a Second Amended Complaint reasserting the FCA claims.[1]

---

[1] Given that Plaintiff has not alleged sufficient facts indicating that Defendants actually submitted false claims to the government, the Court need not consider the viability of each of Plaintiff's five theories of liability under the FCA. For instance, the Court takes no position regarding whether Plaintiff has adequate pled materiality in support of her "implied false certification" theory based on allegations that, *inter alia*, defendants deviated from mandatory vehicle and staff requirements. To state a valid FCA claim under this theory, Plaintiff must allege a "misrepresentation about compliance with a statutory, regulatory, or contractual requirement [that is] material to the Government's payment decision." United States ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 489 (3d Cir. 2017) (quoting Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S.Ct. 1989, 1996 (2016)). As the United States Supreme Court has held, "[t]he materiality standard is demanding." United States ex rel. Escobar, 136 S. Ct. at 2003. "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." Id. Rather, materiality may be found where "the Government consistently refuses to pay claims in the mine run of cases based on noncompliance

7

### 2. Plaintiff's State Common Law Claims (Counts 8 and 9)

Defendants also move to dismiss Plaintiff's state common law claims, arguing that a relator "cannot pursue common law claims on behalf of [the] government," because "[t]here has not been an assignment of the government's damages claim to a relator and [s]he therefore does not have standing . . . ." Doc. 34 at 21 (quoting U.S. ex rel. Repko v. Guthrie Clinic, P.C., 557 F. Supp. 2d 522, 529 (M.D. Pa. 2008) (citing U.S. ex rel. Rockefeller v. Westinghouse Elec. Co., 274 F. Supp. 2d 10, 13 (D.D.C. 2003)) (dismissing relator's common law claims for payment under mistake of fact and unjust enrichment)). Indeed, Plaintiff concedes that "a relator does not have standing to pursue common law claims on behalf of the United States." Doc. 42 at n.1. However, Plaintiff argues that the claims should not be dismissed, since the government maintains the right to intervene at any time in the litigation. Id. Based on these arguments, the Court will dismiss Plaintiff's common law claims without prejudice to the *government* (and not Plaintiff) later pursuing them in the event it chooses to intervene.

## II. ORDER

For the reasons stated above, Defendants' Motion to Dismiss (**Doc. 33**) is GRANTED. Consistent with the foregoing, the Court hereby DISMISSES the First Amended Complaint without prejudice to Plaintiff reasserting the FCA claims (Counts 1 through 7) in a Second Amended Complaint, and without prejudice to the government reasserting the state common law claims (Counts 8 and 9) in the event it elects to intervene.

If Plaintiff wishes to file a Second Amended Complaint asserting FCA claims, she must

---

with the particular statutory, regulatory, or contractual requirement." Id. Again, at this juncture, the Court does not express any opinion as to whether Plaintiff has adequately pled materiality. However, the Court cautions Plaintiff that she should keep this "demanding" standard in mind when deciding which theories of liability, if any, to pursue.

do so on or before October 2, 2017.  Defendants must answer or otherwise plead fourteen (14) days thereafter.  Plaintiff's failure to file a Second Amended Complaint by October 2, 2017 will result in the dismissal of her claims with prejudice.

    IT IS SO ORDERED.

September 25, 2017                                                    s/Cathy Bissoon
                                                                                Cathy Bissoon
                                                                               United States District Judge

CC (via ECF email notification):

All Counsel of Record